IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMERSION CORPORATION, | No. C 02-0710 CW |
| Plaintiff, | ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL AND GRANTING DEFENDANTS' MOTION FOR STAY |
| v. | |
| SONY COMPUTER ENTERTAINMENT AMERICA, INC., and SONY COMPUTER ENTERTAINMENT, INC., | |
| Defendants. | |
| _____/ | |

Defendants Sony Computer Entertainment America, Inc.,
(SCEA) and Sony Computer Entertainment, Inc., (SCEI)
(collectively Sony) renew, pursuant to Federal Rule of Civil
Procedure 50(b), their previous motions for judgment as a matter
of law, on the grounds that no reasonable jury could have found
that the patents were infringed under the doctrine of
equivalents; that the patents were not invalid as anticipated or
made obvious by the prior art or due to an inadequate written
description.  In the alternative, Sony moves for a new trial on
infringement, invalidity and damages.  Sony also moves for a
stay of accounting and of execution of the judgment pending
appeal.  Plaintiff Immersion Corporation opposes the motions.

The matter was heard on May 13, 2005.  Having considered
all of the papers filed by the parties and oral argument on the
motions, the Court denies Sony's motions for judgment as a
matter of law and for a new trial, but grants the motion for a

1  stay.

2                          BACKGROUND

3      The factual and procedural background of this patent case

4  has been set forth in the Court's prior orders.  <u>See</u> March 2,

5  2004 Order Resolving Parties' Motions for Summary Judgment

6  (hereinafter Summary Judgment Order); January 10, 2005 Order

7  Denying Parties' Motions for Judgment as a Matter of Law and

8  Addressing Other Matters (hereinafter JMOL Order).  That

9  information will not be repeated here.

10     The Court entered an amended judgment in favor of Immersion

11 on April 7, 2005 on its claims of infringement and on Sony's

12 counter-claims for declaratory judgment of non-infringement,

13 invalidity and unenforceability.  The Court ordered that Sony

14 pay Immersion the $82,000,000.00 awarded by the jury as well as

15 prejudgment interest in the amount of $8,703,608.00.  No escrow

16 account was required.  The Court has since approved a

17 supersedeas bond in the amount of $102,500,000.00, secured by

18 Sony's transfer of that amount to the Court's Registry, in order

19 to satisfy the judgment in full, including any post-judgment

20 interest and costs.  Sony intends to appeal the judgment against

21 it.

22                       LEGAL STANDARD

23 I.  Judgment as a Matter of Law

24     A motion for judgment as a matter of law after the verdict

25 renews the moving party's prior Rule 50(a) motion for judgment

26 as a matter of law at the close of all the evidence.  Fed. R.

27 Civ. P. 50(b).  The post-trial motion may be raised only as to

28                              2

the same claims and upon the same grounds as the prior motion. Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990); Collins v. City of San Diego, 841 F.2d 337, 342 (9th Cir. 1988).

Judgment as a matter of law after the verdict may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict.  Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment after the verdict is improper. See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir. 1989); Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir. 1985); L.A. Mem'l Coliseum Comm'n v. NFL, 726 F.2d 1381, 1387 (9th Cir. 1984).

II.  New Trial

A new trial may be granted if the verdict is not supported by the evidence.  There is no easily articulated formula for passing on such motions.  Probably the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

The Ninth Circuit has found that the existence of substantial evidence does not prevent the court from granting a new trial if the verdict is against the clear weight of the

3

evidence.  <u>Landes</u>, 833 F.2d at 1371.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  <u>Id.</u>  Therefore, the standard for evaluating the sufficiency of the evidence is less stringent than that governing Defendants' Rule 50(b) motion for judgment after the verdict.

DISCUSSION

I.   Sufficiency of Sony's Rule 50(a) Motion

Immersion opposes Sony's "renewed" motion for judgment as a matter of law as in large part procedurally barred because Sony did not previously move for judgment as a matter of law on invalidity issues.  Sony disagrees, arguing that its Rule 50(a) motions were sufficient to support fully the instant motion, and that the form of its motions during the trial was required by the Court's orders.

In order to bring a post-verdict motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), a party must renew a motion for judgment as a matter of law before submission of the case to the jury, pursuant to Rule 50(a). Rule 50(a) requires that such motions "specify . . . the law and the facts on which the moving party is entitled to judgment."  A post-verdict motion for JMOL "may not be made on grounds not included in the earlier motion."  <u>Duro-Last, Inc., v. Custom Seal, Inc.</u>, 321 F.3d 1098, 1105 (Fed. Cir. 2003).  In <u>Duro-Last</u>, the court found that a pre-verdict motion for JMOL directed to inequitable conduct and the on-sale bar did not raise the issue

United States District Court

For the Northern District of California

of obviousness with enough specificity to meet the requirements of Rule 50, because the pre-verdict motion "was not sufficient to alert [the other party] to all the alleged deficiencies in its obviousness defense."  Id. at 1107.

At the close of Immersion's case in chief, the Court, consistent with its usual practice, deemed Sony to have "timely made the customary motions" to be heard outside the presence of the jury.  Sony followed up with a September 7, 2004 brief "supplement[ing] this motion to clarify the grounds upon which its motion is made."  Brief in Supp. Defs.' Mot. JMOL at 1 n.1. This brief specifically identified various issues of infringement and challenged Immersion's claim for damages.  Sony contends that it could not have identified invalidity issues at this point because it was still in the midst of presenting its own case in chief, which included its invalidity defenses.  At the close of evidence, in the presence of the jury, Sony stated, "we renew all of our JMOL motions previously made."  Trial Tr. 3448:22-23.  Sony submitted no further JMOL briefing until after the verdict.

Sony contends that it was complying with the Court's instruction that motions for JMOL should not be raised in front of the jury in tersely alluding to "all of our JMOL motions previously made."  The Court is unwilling to penalize Sony for a good-faith attempt to comply with the Court's instructions. Furthermore, Immersion has not been prejudiced because Sony's motion does not identify unanticipated gaps in Immersion's defense to invalidity, but instead catalogs various invalidity

United States District Court

For the Northern District of California

1  issues raised at trial.  Therefore, the Court finds that Sony's

2  motion properly renews a prior motion under Rule 50(a).

3  II.  Invalidity

4      Sony moves for judgment as a matter of law on the grounds

5  that no reasonable jury could have found the patents-in-suit to

6  be valid.  More specifically, Sony asserts that the patents-in-

7  suit are invalid as anticipated by patents issued to Craig

8  Thorner, by the AT&T joystick, and by the Cyberman prior art.

9  In addition, Sony asserts that no reasonable jury could have

10  found the patents-in-suit not invalid for obviousness and lack

11  of written description.

12      A patent is presumed to be valid.  35 U.S.C. § 282.  A

13  party alleging that a patent is invalid bears the burden of

14  proof, id., and must overcome this statutory presumption of

15  validity by proving invalidity through clear and convincing

16  evidence, Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co., 204

17  F.3d 1360, 1367 (Fed. Cir. 2000).  Where the only evidence of

18  invalidity is prior art already considered by the patent office,

19  the party alleging that the patent is invalid must overcome the

20  deference accorded the patent examiner, whose duty it is to

21  issue only valid patents, and who is presumed to have properly

22  done his or her job, to have expertise in interpreting the

23  references, and to be familiar with the level of skill in the

24  art.  Id.

25      A.  Thorner

26      Sony contends that no reasonable jury could have found that

27  the asserted claims are not anticipated by U.S. Patent Nos.

28                                6

**United States District Court**
For the Northern District of California

5,669,818 (`818 patent), 5,565,840 (`840 patent) and 5,684,722 (`722 patent), issued to Craig Thorner <u>et al</u>. (collectively, the Thorner patents).

"A patent is invalid for anticipation when the same device or method, having all of the elements contained in the claim limitations, is described in single prior art reference." <u>Crown Operations Int'l, Ltd. v. Solutia Inc.</u>, 289 F.3d 1367, 1375 (Fed. Cir. 2002); <u>see also</u> <u>Scripps Clinic & Research Fdn. v. Genentech, Inc.</u>, 927 F.2d 1565, 1576 (Fed. Cir. 1991) ("Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference."). "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of invention." <u>Crown Operations</u>, 289 F.3d at 1375. "The question of what a reference teaches and whether it describes every element of a claim is a question for the finder of fact." <u>Med. Instrumentation & Diagnostics Corp. v. Elekta AB</u>, 344 F.3d 1205, 1221 (Fed. Cir. 2003).

The '818 patent discloses a "seat-based tactile sensation generator capable of producing tactile sensation to a video game player corresponding to activity portrayed in a video game." '818 patent, abstract. The '818 patent incorporates by reference two previously filed applications that were issued as the '840 and '722 patents. For a description of the Thorner patents, <u>see</u> Summary Judgment Order at 6-8. The '840 and '722

7

United States District Court
For the Northern District of California

patents, but not the '818 patent, were disclosed to the Patent
and Trademark Office (PTO) during the prosecution of the '213
patent; all three Thorner patents were disclosed to the PTO
during the prosecution of the '333 patent.

>    1.   Claim 7 of the '213 Patent

Sony contends that the Thorner patents disclose all of the
elements of claim 7 of the '213 patent.  In its Summary Judgment
Order, the Court found that a dispute of fact existed as to the
following element of claim 7,

> transmitting said activating signals to said mass-moving
> actuators for individually activating each of said mass-
> moving actuators to produce a complex tactile sensation as
> a result of varying the frequency and amplitude of said
> vibration.

The Court construed this limitation to require that more than
one mass-moving actuator be activated individually in order to
produce collectively a single complex tactile sensation.
Although the Thorner patents teach both the individual
activation of mass-moving actuators and the varying the
frequency and amplitude of the vibrations, Sony was not able to
identify any passage in the Thorner patents that teaches
combining these techniques to use the individual activation of
multiple actuators to create a complex tactile sensation.
Summary Judgment Order at 8-9.

Sony now argues that Immersion's expert Dr. Robert Howe
testified that the host dependent and independent circuits could
be used in combination to product multiple activating signals
and, in turn, a complex tactile sensation.  However, Dr. Howe's
testimony that Thorner explicitly teaches combination of the two

United States District Court

For the Northern District of California

circuits refers to using them at the same time to "drive different parts of the display," not to combine to create a single complex sensation.  Trial Tr. 3041:4-6.  This explanation is consistent with the patents, which state merely that the two circuits "can be alternatively used or used in combination." '818 patent at 3:20-21.  According to Dr. Howe, the hardware implementation of the Thorner patents involved actuators separated by a distance and set in foam rubber, and a vibration-absorbing material, ensuring that each actuator would "generate a separate localized sensation."  Trial Tr. 2964:23-24.  This physical evidence, while not necessarily dispositive, would have supported a reasonable jury's belief that the "transmitting said activating signals . . . to produce a complex tactile sensation . . ." element was not disclosed by Thorner.  Sony therefore has not shown by clear and convincing evidence that any reasonable jury would have found claim 7 of the '213 patent anticipated by Thorner, nor does the clear weight of the evidence show that this claim is anticipated.

2.  '213 Patent "Decoupling" Claims

The Court found in its Summary Judgment Order that a dispute of fact existed as to whether the Thorner patents disclose all of the elements of claims 41 through 46, 49, 50, 53 and 54 (the decoupling claims) of the '213 patent.  Claim 41 is representative of the decoupling limitation disputed at trial,

the magnitude of the tactile sensation being controlled by modulating the power sent to the motor, the frequency of the tactile sensation being controlled independently of the magnitude by repeating pulses of current sent to said motor at a selected rate.

9

United States District Court

For the Northern District of California

Immersion's expert Dr. Howe testified that the Thorner patents did not recognize as an issue the decoupling of amplitude and frequency, and therefore did not teach a solution to that problem.  Trial Tr. 2974:16-19.  Sony's expert Dr. Kenneth Salisbury also testified that Thorner did not disclose the decoupling of frequency and magnitude.  Trial Tr. 2802:9-18. Dr. Salisbury's other testimony that Thorner teaches repeated pulses of current at an optionally adjustable rate, <u>id.</u> at 2496:14-2497:12, though a technique that is relevant to decoupling, falls short of proving that Thorner anticipated the invention.  A reasonable jury could easily have found that the decoupling claims were not anticipated by Thorner.

> 3.  Claim 14 of the '333 Patent

The parties' dispute with respect to claim 14 of the '333 patent focuses on whether Thorner teaches the second element, "enabling control of said plurality of rotating-mass actuators to create in combination a vibration upon said user with an amplitude that is non-uniform over a duration of said vibration."

In its Summary Judgment Order, the Court found that, due to internal inconsistencies, whether the Thorner patents actually disclosed this limitation to a person of ordinary skill in the art was a disputed issue of fact.  As explained in Section II(A)(1), Dr. Howe testified that the vibrations in Thorner were distributed spatially and thus did not teach enabling a "plurality of rotating-mass actuators to create in combination a vibration upon said user."  A reasonable jury could therefore

10

**United States District Court**
For the Northern District of California

1   have concluded that claim 14 of the '333 patent was not

2   anticipated by Thorner, and the clear weight of the evidence

3   does not show that claim 14 was anticipated.        4.  Claims

4   15 and 17 of the '333 Patent

5       The parties dispute whether Thorner anticipates the final

6   limitation of claim 17 of the '333 patent:

7       enabling activations of said plurality of rotating-mass
        actuators, each of said activations having an amplitude
8       profile difference from said other activations to create a
        tactile sensation upon the user that has a non-uniform
9       amplitude over a duration of said tactile sensation.

10  Claim 15 contains a similar limitation that is contested for the

11  same reason, and dependent claims 16 and 18 are also placed at

12  issue here.  In light of Immersion's position that this

13  limitation may be met by two motors vibrating at different

14  amplitudes, Sony argues that the fact that Thorner teaches the

15  individual activation of actuators, and separately teaches that

16  vibrations may vary, means that no reasonable jury could have

17  found that this claim limitation was not met.

18      The Court in its Summary Judgment Order found that a

19  dispute of fact existed as to whether Thorner's disclosure of

20  the ability to control actuators individually would cause one of

21  ordinary skill in the art to understand that the actuators could

22  be activated with different frequencies.  At trial, Dr.

23  Salisbury testified that the '818 patent's disclosure of the

24  individual activation of actuators in sequence did result in

25  disclosure of all elements of the disputed claims of Immersion's

26  '333 patent, using as illustration Thorner's "sword slash

27  event."  Trial Tr. 2522:5-20.  Dr. Howe, examining the same

28                                11

United States District Court

For the Northern District of California

1    event, testified that it involved using the host dependent

2    circuit to activate motors according to binary, on-off controls

3    that did not meet the claim limitations.  Trial Tr. 2960:4-

4    2961:23.  The jury was faced with dueling experts who each had a

5    different opinion about the scope of the Thorner patents.  Sony

6    does not provide any grounds to support its implied assertion

7    that a reasonable jury would necessarily have accepted Dr.

8    Salisbury's testimony and rejected Dr. Howe's.  The Court finds

9    that a reasonable jury could have reached the converse

10   conclusion, and that the clear weight of the evidence does not

11   show that claim 17 and similar claims were anticipated by

12   Thorner.

13       B.  AT&T Joystick

14       Sony contends that no reasonable jury could have found that

15   the asserted claims are not anticipated by the AT&T Joystick, as

16   exhibited at trial, described in the article by Brian Schmult

17   and Robert Jebens, "Application Areas for Force Feedback" (the

18   Schmult article) and demonstrated in the force feedback joystick

19   video.  The Schmult article was disclosed to the PTO during

20   prosecution of both the '213 and the '333 patents.

21       Immersion contended at trial that the AT&T Joystick did not

22   anticipate the patents-in-suit because it was not an "eccentric

23   mass" motor device as required by the patents.  See, e.g., '213

24   patent, claim 7 at 18:48-51.  Dr. Howe testified that although

25   the rotating links of the AT&T Joystick are masses and are

26   eccentric, Trial Tr. 3079:19, they nevertheless would not have

27   been recognized as an "eccentric mass" motor device, as

28                                12

United States District Court

For the Northern District of California

described in the Immersion patents, by one skilled in the art at the time. Trial Tr. 2979:9-13. Nor, according to Dr. Howe, would one skilled in the art have realized that the control techniques of the AT&T Joystick could be used with the smaller and cheaper eccentric mass motors. Id. 2986:13-2987:7. Dr. Salisbury conceded that in the past he had categorized the AT&T Joystick as a ground-based device rather than an eccentric mass motor device. Id. 2819:12-17; 2820:4-12. The jury could reasonably have decided that this difference was significant and meant that Sony had not proved by clear and convincing evidence that the AT&T Joystick anticipated Immersion's patents. For the same reasons, the clear weight of the evidence does not show that the patents-in-suit were anticipated by the AT&T Joystick.

C.   Cyberman

Sony contends that no reasonable jury could have found that claim 41 of the '213 patent was not anticipated by the Cyberman device, as demonstrated by video at trial and described by its inventor, James Barnes, the Cyberman SWIFT manual and Cyberman promotional materials. Cyberman was not disclosed to the PTO during prosecution of the patents-in-suit. The Court concluded after a bench trial that Immersion's failure to disclose Cyberman to the PTO during prosecution of the '333 patent did not constitute inequitable conduct. See March 24, 2005 Findings of Fact and Conclusions of Law at 4-14 (finding Sony failed to show that Cyberman met materiality criteria and describing the Cyberman technology).

Claim 41 discloses a "method of decoupling control over the

13

magnitude and frequency components of the tactile vibration
sensations generated by an eccentric mass-based vibrotactile
unit."

The parties dispute whether Cyberman discloses the "decoupling"
limitation, i.e. "the frequency of the tactile sensation being
controlled independently of said magnitude."  Sony asks the
Court to find that a reasonable jury would have to find that
claim 41 had been anticipated, based on the testimony of Dr.
Salisbury and Mr. Barnes as well as the Cyberman materials.
However, Dr. Salisbury himself conceded that, prior to rendering
his invalidity opinion, he did not see or test Cyberman, Trial
Tr. 2832:23-2832:10, and that he did not learn of a way to
decouple frequency and magnitude based on his study of the
Cyberman materials.  Trial Tr. 2829:4-2830:5.  Sony points to
the inventor's testimony that Cyberman could be used to vary the
speed of the single motor, id. at 1870:7-15, but does not
identify either testimony or documentary evidence to prove that
Cyberman anticipated the decoupling of frequency and magnitude.
Sony has not shown that any reasonable jury would have found
clear and convincing evidence that Cyberman anticipated claim
41, or that the jury ignored the clear weight of the evidence.

    D.  Obviousness

    Sony contends that no reasonable jury could have found that
the patents-in-suit were not rendered obvious by the Thorner
patents, the AT&T Joystick and Cyberman, in combination or as
combined with personal massager inventions.

    A patent is invalid for obviousness if the differences

14

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). To determine if a patent is invalid for obviousness, the court must consider the scope and content of the prior art, the difference between the patented invention and the prior art, and the level of skill in the art. <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17 (1966); <u>see also Crown Operations</u>, 289 F.3d at 1375. "Determinations of obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." <u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 546 (Fed. Cir. 1998). "There must be a teaching or suggestion within the prior art, within the nature of the problem to be solved, or within the general knowledge of a person with ordinary skill in the field of the invention, to look to particular sources, to select particular elements, and to combine them as combined by the inventor." <u>Crown Operations Int'l</u>, 289 F.3d at 1376; <u>see also Ecolochem, Inc. v. S. Cal. Edison Co.</u>, 227 F.3d 1361, 1371-72, 1375 (Fed. Cir. 2000).

Immersion argues <u>inter alia</u> that Sony has not shown that any reasonable jury would have found, by clear and convincing evidence, motivation to combine the personal massager patents with the other prior art. The only evidence Sony identifies to support its contention that one skilled in the art would be motivated to combine video game and personal massager technology is the post-hoc testimony of Dr. Salisbury. <u>See, e.g.</u>, Trial

Tr. at 2635:24-2637:8 (Q: "If you were facing the other problem that Immersion identified . . . where would you look in the prior art to address these problems?  A. Well, I would look someplace where people had applied vibration to the body for perhaps longer periods of time.  And massage devices we've talked about are certainly good examples of that . . ."").  Dr. Salisbury's general statements are insufficient to show that any reasonable jury would have found clear and convincing actual evidence of a "clear and particular" motivation to combine. <u>Teleflex, Inc., v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1334 (Fed. Cir. 2002).

Furthermore, Immersion presented substantial evidence of several secondary indicia of non-obviousness.  Immersion has successfully licensed its patents to other, although not all, third-party manufacturers.  Trial Tr. 1295::20-25; Trial Ex. 423A.  Meanwhile, other vibrating video game prior art, including the AT&T Joystick and Cyberman, failed to achieve commercial success.  In arguing that the Playstation system owes its success to a variety of factors, Sony attacks a strawman; even if complex vibration is only one of many Playstation features that attract consumers, it may still be commercially significant.

For these reasons, Sony has failed to show that no reasonable jury could conclude that the Thorner patents, AT&T Joystick and Cyberman, in combination with the personal massager patents, did not render the asserted claims of the patents-in-suit obvious, nor does the weight of the evidence clearly favor

16

United States District Court

For the Northern District of California

1   Sony.

2        E.   Inadequate Written Description

3        Finally, Sony contends that no reasonable jury could have

4   found that the decoupling claims of the '213 were not invalid

5   for inadequate written description.  In order to fulfill the

6   written description requirement, patent specifications must

7   clearly allow persons of ordinary skill in the art to recognize

8   that the inventor invented what is claimed.  Gentry Gallery,

9   Inc., v. Berkline Corp., 134 F.3d 1473, 1479 (Fed. Cir. 1998).

10        Sony argues that the '213 patent describes two methods of

11   decoupling amplitude and frequency of vibration but fails to

12   describe the pulsing method used by Sony's products.  Dr.

13   Salisbury testified that one of ordinary skill in the art would

14   not have understood this method of "short vibrations separated

15   in time" to be in the possession of the inventors.  Trial Tr.

16   2403:8-21.  Sony also notes that named inventor Dr. Mark Yim

17   testified that this pulsing method was not disclosed in his

18   inventor notebook, id. at 455:21-456:2; 456:9-13, and 457:12-

19   458:13; however, Dr. Yim's testimony does little to further

20   Sony's argument because he said generally that no method of

21   decoupling was referred to in those pages of his notebook.

22        Immersion, on the other hand, points to several references

23   in the patent's specifications that it says refer to the pulsing

24   method of decoupling.  See, e.g., '213 patent at 2:25-26

25   (explaining that "[f]or a small number of rapid rotations, the

26   rotating force vector feels like a single impulse"); 4:2-9

27   (explaining a technique referred to as "amplitude modulation").

28                                    17

**United States District Court**
For the Northern District of California

Dr. Colgate testified that the accused Sony products decouple frequency from amplitude "as taught by the Immersion patents," and that one skilled in the art would have understood the '213 patent to teach decoupling of Sony's unidirectional drive signal motors.   Trial Tr. 3159:16-3160:1.   In light of the conflict between Dr. Colgate's and Dr. Salisbury's testimony, a reasonable jury could therefore find that Sony had failed to meet its burden to prove by clear and convincing evidence that the decoupling claims of the '213 patent were invalid due to inadequate written description.   The Court also finds that the evidence does not clearly weigh in Sony's favor.

For these reasons, Sony's motion for judgment as a matter of law on the issue of invalidity, or in the alternative for a new trial, is denied.

III.        Infringement

Sony moves for a new trial on the grounds that the jury's findings of direct infringement by SCEA and inducement of infringement by SCEI are contrary to the weight of the evidence. Sony further moves for judgment as a matter of law, or in the alternative a new trial, on the issue of infringement under a doctrine of equivalents theory.   Immersion opposes the motions.

A.   Direct Infringement

Sony argues that it is entitled to a new trial because the clear weight of the evidence shows that (1) SCEA did not infringe the patents by using the Playstation system; (2) SCEA did not sell the accused Playstation console, controller and games as a complete and operable system; and (3) the accused

18

products do not practice certain claim requirements.  These arguments are addressed in turn.

Sony notes that there was no direct evidence that SCEA employees encountered the accused vibrations while testing the games or operating kiosks at trade shows.  However, Sony fails to address the Court's earlier finding regarding circumstantial evidence of infringement.  See JMOL Order at 6-7 (finding sufficient circumstantial evidence for a rational jury to infer direct infringement).  The Court does not find that an inference of direct infringement by SCEA contradicts the clear weight of the evidence.

Sony also challenges the jury's finding of direct infringement based on sales, pointing to the fact that only one accused game was sold bundled with the PlayStation console and Dualshock controller.  Again, Sony does not explain how the Court's earlier finding -- that a reasonable jury could have found that the accused consoles, controllers and games were indeed sold as an operable system based on Sony marketing and game instructions -- is contrary to the clear weight of the evidence.

Finally, Sony argues that it is entitled to a new trial because the clear weight of the evidence shows that certain limitations of each asserted claim were not practiced by the accused products.  The Court is unpersuaded by Sony's argument, which simply lists claim limitations on which Dr. Salisbury offered expert opinion testimony.  See Renewed Mot. for JMOL at 23:11-21.  The jury also heard extensive opinion testimony from

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

1  Dr. Colgate, who testified that, based on his careful study of

2  the claims, Sony's products did practice the art of the

3  inventions.  <u>See, e.g.</u>, Trial Tr. 724:7-725:1.  The clear weight

4  of the evidence does not favor Sony.

5      For these reasons, the Court denies Sony's motion for a new

6  trial on the issue of infringement by SCEA.

7      B.   Indirect Infringement

8      Sony argues that it is entitled to a new trial because the

9  clear weight of the evidence shows that the accused products

10  have non-infringing uses and there is no evidence that SCEI

11  specifically induced infringing usage.  In light of the jury's

12  finding with respect to SCEA's direct infringement, which the

13  Court found above was not inconsistent with the clear weight of

14  the evidence, a finding that SCEA's parent company is liable for

15  inducement of that direct infringement does not warrant a new

16  trial.  Sony provides no evidence, much less the clear weight of

17  the evidence, to prompt the Court to dismiss an inference that

18  SCEI encouraged SCEA's Playstation efforts, including SCEA's

19  testing and selling in such a way as to exploit the accused

20  vibration feature.

21      For these reasons, the Court denies Sony's motion for a new

22  trial on the issue of infringement by SCEI.

23      C.  Doctrine of Equivalents

24      Sony moves for judgment as a matter of law on the issue of

25  infringement under the doctrine of equivalents, on the grounds

26  that Immersion failed to provide sufficient evidence or argument

27  on equivalents at trial.  Immersion opposes the motion.

28
                                20

**United States District Court**

For the Northern District of California

As the Court found in its JMOL Order, a reasonable jury could have found that there was sufficient evidence that SCEA directly infringed and that SCEI induced infringement of the patents-in-suit. Moreover, in Section III(A) above, the Court found that the clear weight of the evidence does not contradict a finding that the limitations of each asserted claim were practiced by the accused products under a theory of literal infringement.

Sony has not shown that it is entitled to judgment as a matter of law on the issue of infringement despite its failure to challenge successfully the sufficiency of the jury's literal infringement findings. The cases it cites are inapposite. <u>Lear Siegler, Inc., v. Sealy Mattress Co. of Michigan, Inc.</u>, 873 F.2d 1422, 1425 (Fed. Cir. 1989), did not involve a general verdict question, but a challenge to the sufficiency of a jury's finding of infringement under the doctrine of equivalents where the jury specifically found no liability for literal infringement. <u>Cordis Corp. v. Medtronic AVE, Inc.</u>, 2002 WL 1022509 (D. Del. May 15, 2002), in which a district court decided to grant a motion for a new trial upon determining that its doctrine of equivalents instruction was in error, is not persuasive where, as here, the Court has found evidence of literal infringement to be sufficient.

Here, as in <u>Biologische Naturverpackungen GmbH v. Biocorp, Inc.</u>, 249 F.3d 1341, 1349 (Fed. Cir. 2001), the jury did not specify whether it found literal infringement or infringement under the doctrine of equivalents. Because the Court concludes

"that substantial evidence supports a finding of literal infringement, it is not necessary for [it] to address the issue under the doctrine of equivalents." Id. Therefore, Sony's motion for judgment as a matter of law on the issue of infringement under the doctrine of equivalents is denied as moot.

IV.  Damages

Sony argues that it is entitled to a new trial on the issue of damages or, in the alternative, to remittitur.

Sony acknowledges that its motion reiterates arguments made in its JMOL brief, explaining that the standard for a new trial is lower.  However, Sony does not address the substance of the Court's JMOL ruling, which noted that Immersion had produced evidence that the accused games were very popular.  The Court is not persuaded that Sony is entitled to a new trial on damages or to remittitur, and its motion is accordingly denied.

V.  Motion for Stay

Sony moves for a stay of accounting and execution of judgment in this case pending appeal.  Immersion opposes the motion.

Immersion identifies no reason to force Sony to incur the costs of the supersedeas bond filed with the Court instead of placing the $102,500.00 into an interest-bearing escrow account at Sony's bank, Chase Manhattan.  Therefore, the Court grants Sony's request for a stay of execution of the judgment pending appeal, subject to the parties filing a stipulation as to the conditions for the escrow account.  Until the Court receives

such a stipulation, the supersedeas bond will remain in effect.

CONCLUSION

For the foregoing reasons, the Court DENIES Sony's motion for judgment as a matter of law and for a new trial (Docket No. 1654) and GRANTS Sony's motion for a stay of execution of the judgment (Docket No. 1666).

IT IS SO ORDERED.

Dated: 5/17/05                              /s/ CLAUDIA WILKEN
                                           CLAUDIA WILKEN
                                           United States District Judge