UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA, INC.; SONY COMPUTER ENTERTAINMENT, INC.; and MICROSOFT CORPORATION,<br><br>Defendants.<br>───────────────────────────<br>AND RELATED COUNTERCLAIMS | No. C-02-0710 CW (WDB)<br><br>**ORDER RE FOUR CONSOLIDATED MOTIONS TO COMPEL DISCOVERY AND PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER** |

On November 15, 2005, the court heard oral argument in connection with the parties' motions, docket numbers 1766, 1770, 1783, 1787, and 1791.

For the reasons set forth in full during the hearing, the court ORDERS as follows.

<u>PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER (D.N. 1766)</u>

Through its Motion for a Protective Order, Immersion asks the court for relief as to several different matters. In the numbered paragraphs that follow, we address each such matter in turn.

1. Plaintiff seeks to prohibit defendant from using the depositions of Matt Marsala and Paul Heilman. Although Sony provided plaintiff with only three days notice, counsel for Immersion attended these depositions and cross-examined these

-1-

individuals. Because Immersion has failed to establish that the testimony from these deponents could not be useful to Judge Wilken as she addresses the merits of the Rule 60 issues, and because Immersion has failed to persuade the court that permitting Sony to use this testimony would cause Immersion to suffer from an unfair disadvantage, the court DENIES plaintiff's request for an order prohibiting Sony from using any of the testimony given by either of these witnesses during their depositions.

2.      Because Immersion has persuaded the court that it is quite unlikely that a deposition of John Maldjian or of Raymond Moser would shed probative light on any of the primary factual issues raised by the Rule 60 motion (the interactions they allegedly had with counsel for Immersion occurred just a couple of months ago, well after the alleged fraud would have been committed on the court), the court PROHIBITS Sony from deposing Messrs. Maldjian and Moser in these proceedings.

3.      Immersion also asks the court to prohibit Sony from deposing Morgan Chu, Immersion's lead counsel during the trial and in these proceedings.  Sony seems to contend that Mr. Chu was an instrument of the alleged fraud on the court and that some apparent imprecision during his closing argument evidences his complicity in the alleged misconduct.

The court, however, has reviewed in context the statements in his closing argument through which (in part) Mr. Chu is alleged to have misled the court and the jury. Viewed in context, the accused statements do not appear significant -- and certainly came nowhere near the center of Mr. Chu's pitch to the jury.

Immersion has reassured the court that Mr. Chu will not be a source of evidence (in any form) in these Rule 60 proceedings. Moreover, according to Immersion, Mr. Chu has never had any direct interaction with Mr. Thorner.

It is likely that permitting Sony to depose Mr. Chu either would invade the attorney-client privilege and Mr. Chu's work product (as well, perhaps, as Immersion's) or would yield almost no relevant testimony at all.  Moreover, if Mr. Chu were to become a witness there is a distinct possibility that he could no longer serve as

1  Immersion's counsel in these proceedings.  That development, of course, would shatter
2  the attorney-client relationship and deprive Immersion of counsel of its choice.
3       In short, Immersion has persuaded the court that there is too little likelihood that
4  deposing Mr. Chu would yield evidence essential to a fair determination of the Rule 60
5  issues to justify the significant threats to important competing interests that taking his
6  deposition would entail.
7       4.   Because plaintiff does not intend to use the testimony of Dr. Robert Howe
8  (expert witness for plaintiff during the preceding trial) in connection with the Rule 60(b)
9  motion, and because Dr. Howe has not formed new opinions about any matters relevant
10 to that motion, the court also prohibits Sony from deposing Dr. Howe in these Rule 60
11 proceedings.

## DEFENDANT'S MOTION TO COMPEL RESPONSIVE ANSWERS BY IMMERSION'S DEPONENTS AND TO EXCLUDE TESTIMONY BY IMMERSION'S DEPONENTS  (D.N. 1787)

16       5.   Sony asks the court to prohibit Immersion from using Stuart Smolen's
17 declaration or deposition testimony.  While counsel for Immersion may have been
18 justified in stopping the deposition of Mr. Smollen (the court is not sure about this), it
19 is clear that the manner in which Immersion's counsel terminated the proceedings was
20 not professionally acceptable.  That finding, however, does not conclude our inquiry.
21 Has Sony persuaded the court that Sony would suffer some unfair disadvantage if
22 Immersion were permitted to use this evidence? Or that the misconduct by Immersion's
23 counsel in terminating the deposition was so pronounced that the appropriate sanction
24 is to bar Immersion from using testimony from Mr. Smolen?   Because the answer to
25 both of these questions is no, the court DENIES this motion.
26       6.   The court also DENIES defendant's request to compel Laura Peter, general
27 counsel to Immersion, to disclose whether Irell & Manella[1] had copies of the alleged

---

[1] Hereinafter, Irell & Manella shall be referred to as "Irell."

1  offer by Immersion to purchase Mr. Thorner's '840 patent and/or copies of Immersion's
2  license of Mr. Thorner's '722 patent. Because neither patent was prior art when plaintiff
3  responded to defendant's document request number 185, Irell reasonably objected to that
4  request on the basis of relevance.  It follows that compelling Ms. Peter to disclose
5  matters otherwise protected by the work product doctrine and/or the attorney-client
6  privilege is quite unlikely to yield information material to Judge Wilken's ability to
7  resolve fairly the issues raised by the Rule 60 motion.

8       7.    Sony asks the court to compel Ms. Peter to describe the efforts undertaken
9  by Immersion to locate documents responsive to request number 185 and documents
10 about any offers to purchase patents from Mr. Thorner or to secure a license from Mr.
11 Thorner under his patents. The court DENIES this request because compelling Ms. Peter
12 to provide this information would invade areas protected by the work product doctrine
13 and that invasion is not justifed where, as here, it is unlikely to yield significant evidence
14 pertaining to the Rule 60(b) motion.

15      8.    Sony also seeks to preclude Ms. Peter from testifying about the purpose or
16 intended effect of her April 18, 2005 e-mail to Mr. Thorner.  Immersion responds by
17 assuring the court that it does <u>not</u> intend to offer Ms. Peter's testimony about this e-mail
18 in connection with the Rule 60(b) motion.  Therefore, the court DENIES Sony's request.

19

20 <u>DEFENDANT'S MOTION TO COMPEL PRODUCTION OF HARD DRIVES FOR</u>
21 <u>INSPECTION (D.N. 1783)</u>

22      9.    The court DENIES defendant's request to allow an independent expert to
23 search Immersion's and Irell's hard drives to locate references to notes regarding the
24 October 2003 meeting between Mr. Thorner and Mr. Heinrich.

25     Plaintiff represents that it conducted a thorough search for any such material and
26 has produced or logged everything that is responsive.  Defendant has failed to persuade
27 the court otherwise.

28     Defendant also failed to persuade the court that the purpose of the October 2003
   meeting was to commit a crime or fraud.

For these reasons, defendant has not established a legal justification for the penetrating invasion of the attorney client privilege and work product protection it seeks.

### DEFENDANT'S MOTION TO COMPEL PLAINTIFF AND ITS COUNSEL TO PRODUCE DOCUMENTS REVEALING OR RELATING TO WHAT THEY WERE TOLD BY CRAIG THORNER (D.N. 1770)

10. Sony seeks all documents relating to any communications from Mr. Thorner to Immersion or Irell about Mr. Thorner's "non-patent public use" prior art. The documents Sony seeks are presumptively protected by the work product doctrine and the attorney-client privilege (e.g., Sony seeks documents that reflect how Irell assessed the legal implications of communications from Thorner and what Irell told, in confidence, its client, Immersion, about those implications). In its motion to compel, Sony advanced several different arguments in support of its position. None were persuasive. The two about which some comment is justified here sound in (1) waiver theory and (2) the crime/fraud exception to the attorney-client privilege.

Waiver theory is rooted, primarily, in notions of fairness and voluntariness. In these Rule 60 proceedings, Sony has attacked Immersion and its counsel -- accusing them of intentionally deceiving not only a litigation opponent, but also the court. More specifically, Sony has accused Immersion and Irell of intentionally concealing information well known to them (for a long time) that would invalidate the patents in suit -- and, in essence, of paying Mr. Thorner not to disclose that information either to the court or to Sony. These are extremely serious allegations in any setting. They take on added significance here -- because, if true, they would require the courts to vacate an 82 million dollar judgment that Immersion already has secured.

When accused of such serious wrongdoing, Immersion and Irell need to defend themselves. It is completely unfair (the key concept here) to require them to choose between remaining silent in the face of such allegations (and, in consequence, losing the 82 million dollar judgment and their professional licenses) and "waiving" the protections to which they otherwise would be fully entitled under the attorney-client privilege and the

-5-

work product doctrine.  In these circumstances, it also is hardly accurate to suggest that by choosing to defend themselves in the only way they could (by disclosing what Mr. Thorner communicated to them), they "voluntarily" relinquished a known right.

Sony argues that at the time the subject communications occurred, Mr. Thorner was a paid consultant to Immersion or a retained expert -- and that, as such, communications with him fell within the privilege.  Sony goes on to argue that by testifying about what Mr. Thorner communicated to them, Immersion and Irell disclosed otherwise privileged communications and thereby waived the privilege as to all other communications on the same subject. We reject this line of reasoning.  We do so in part because Sony has failed to persuade us that it is appropriate (in this particular factual and legal setting) to characterize Mr. Thorner as an expert retained for litigation purposes or as a paid consultant who is the equivalent, for purposes of privilege doctrine, of a full-time employee.  Mr. Thorner's relationship with Immersion and Irell was non-linear, uneven, mercurial and unpredictable.  It also was marked by considerable tension.  He routinely seemed to want more from Immersion than Immersion was willing to give.  It would have been clear to any reasonably savvy business person or lawyer in Immersion's or Irell's shoes that Mr. Thorner's path of future travel was not predictable.  It was clear that he might become an adversary in business or even in litigation.  He might sue.  So Immersion and Irell needed to be a bit guarded and wary when they communicated with him.  There was no relationship of clear trust and confidence of the kind that should attach between an attorney and client. Because of these facts, communications between Mr. Thorner and Immersion and/or Irell were not on the same legal footing as communications between Irell and Immersion.  This is important -- because Sony contends that communications with Mr. Thorner were communications with a client, such that revealing them constitutes a waiver of the attorney-client privilege.  To so conclude would do violence not only to the reality of the relationships involved, but also to the norms of fairness and voluntariness that inform doctrine in this arena.  We decline to do that violence.

1    Sony also has contended that it has made a prima facie showing that the crime/fraud
2 exception to the attorney-client privilege attaches to these communications so that the
3 court should examine them *in camera* (or order them disclosed directly to Sony).   In
4 support of this argument, Sony relies for the most part on the substance of its Rule 60
5 motion. In effect,  Sony asks this court to anticipate Judge Wilken's ruling on the merits
6 of the motion.  In essence, we are asked to issue a preliminary injunction.  We also
7 decline this invitation.  Sony has failed to make a showing, specific to any particular
8 communication, that there is a substantial basis for inferring that the purpose of the
9 communication was to further a fraud or crime.  Absent such a communication-specific
10 showing, we cannot conclude that Sony has made a *prima facie* case that the crime/fraud
11 exception applies.

    For these and other reasons set forth during the hearing, we DENY Sony's motion.



**PLAINTIFF'S MOTION TO COMPEL DEFENDANT AND ITS COUNSEL TO PRODUCE DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS (D.N. 1791)**

17    11.    Plaintiff seeks an *in camera* inspection of documents relating to
18 communications among Mr. Thorner, Mr. Russ, Mr, Russell, Mr. Gewirtz, and
19 defendant or Electro Source in connection with the $150,000 payment to Mr. Thorner
20 for certain licensing rights.

21    In <u>United States v. Zolin</u>, 491 U.S. 554, 572 (1989), the Supreme Court
22 established a two step approach for determining whether a court should conduct an *in
23 camera* review to establish applicability of the crime-fraud exception.  First, the
24 moving party must demonstrate "a factual basis to support a good faith belief by a
25 reasonable person" that *in camera* review may reveal evidence that the crime-fraud
26 exception applies.  If the moving party satisfies the first step, the second prong of
27 <u>Zolin</u>'s two-step approach directs the court to exercise its discretion in deciding
28 whether to conduct the *in camera* review.  <u>Zolin</u> teaches that in exercising that
discretion, a trial court should take into account all the pertinent circumstances, the

1  single most important of which seems to be the level of likelihood that the court will
2  find evidence that the communications in question were in fact made for the purpose
3  of facilitating the commission of a fraud or a crime.  Id.
4      Here, we FIND that whether plaintiff has made a sufficient showing under the
5  first prong of the Zolin test is a very close question.  We have substantial worries
6  about what was actually going on in the interactions that resulted in the signing of the
7  license and the movement of $150,000.00 from Sony through Electrosource to Mr.
8  Thorner.
9      Things aren't a whole lot clearer when we apply the second prong of the Zolin
10 test.  While there certainly is some chance that an *in camera* review would uncover
11 evidence of improper behavior by defendant or its agents, it is this court's judgment
12 that the likelihood of doing so is not sufficient to justify the invasion of the privilege
13 that would occur if the court inspected the documents Immersion pursues.
14     Therefore, the court DENIES plaintiff's request for an *in camera* inspection of
15 documents and/or communications pertaining to the interactions that led to the
16 licensing agreement and $150,000.00 payment to Mr. Thorner.
17     IT IS SO ORDERED.

Dated:   November 28, 2005                    /s/ Wayne D. Brazil
                                              WAYNE D. BRAZIL
                                              United States Magistrate Judge

Copies emailed to:
parties,
CW, WDB, stats