UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

ORIGINAL FILED

JUN 1 4 2006

RICHARD W. W___
___ U.S. ___
NOR___ DIS___
OAKL___

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAIN-<br>MENT AMERICA, INC.; SONY<br>COMPUTER ENTERTAINMENT,<br>INC.; and MICROSOFT<br>CORPORATION,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | No. C-02-0710 CW (WDB)<br><br>SPECIAL MASTER'S<br>RECOMMENDATION<br>TO JUDGE WILKEN RE<br>PLAINTIFF'S COST<br>CLAIM |

On January 4, 2006, the Special Master issued a "Tentative Ruling Regarding Motion for Review of Clerk's Taxation of Costs and Analysis of Legal Authority." This Tentative Ruling analyzed many of the cases cited by the parties and attempted to draw from this analysis certain general legal principles applicable to the cost motion at hand. A copy of that Tentative Ruling is herewith attached to this Recommendation.

In late March 2006 the Special Master met personally with the attorneys in this matter to discuss issues raised in said Tentative Ruling. The focus of discussion was on the issue of exemplification or what is referred to by Plaintiff as "charts diagrams, videotapes, and other visual aids."

Exemplification (Non-Copying):

The amount requested for this category is $510,568.33. (See items 11-15 of Exhibit D listing amounts of $19,410.00, $90,491.25, 53,599.40, 204,649.18, and $142,418.50.) Because of the amount, this is the major dispute between the parties. The category of exemplification brings into play two legal principles that have been developed by case law:

1) The intellectual and expert research and analysis preparing graphics and other exemplifications do not appear to be recoverable. The costs recoverable relate only to their physical preparation.

2) If merely illustrative of expert or other witnesses' testimony or essentially argumentative, there is a substantial body of case law that finds this form of exemplification costs not recoverable.

At the March hearing Plaintiff argued that the Ninth and Seventh Circuits are far more liberal and expansive regarding allowing costs for exemplification than other circuits. In this regard,

they cite a recent opinion by Judge Wilken setting this principle out,

namely, *L.G. Electronics v. Bizcom Electronics, et al.* In said opinion

the court allowed costs for ". . . the <u>physical production</u> of computer

animated demonstratives" (emphasis added), and made these

comments about the Ninth Circuit's position regarding the allowance

of costs for videotapes and other visual aids:

> "The holding in *Cefalu* and the dissent in *Kohus* are more in
> line with Ninth Circuit precedent, as well as Local Rule 54-
> 3(d)(5)'s specific allowance of 'videotapes and other visual
> aids.' Clearly, the Ninth Circuit allows taxation of the increased
> costs associated with using modern technology for purposes
> traditionally permissible under § 1920(4). *See, c.g., Maxwell*,
> 862 F.2d at 770 (holding that costs of photographic materials
> are encompassed within 'exemplification and copies of papers'
> category). In his dissent, Judge Dyk noted that *Swan* relied on
> a Ninth Circuit case which allowed costs for illustrative charts.
> 282 F.3d 1361 (quoting *Reinharts, Inc., v. Caterpillar Tractor
> Co.*, 99 F.2d 648, 649 (9th Cir. 1938)). Today, computer
> animations constructed by graphic artists are used to facilitate
> the jury's understanding of the evidence and are more similar to
> the 'elaborate illustrative charts' allowed in *Reinharts* than to
> disallowed 'models introduced by complainant as exhibits.' 99
> F.2d at 648. Therefore, the Court grants Compal's request for
> an order increasing the Clerk's taxation of costs by $26,312.09
> for the physical production of computer-animated
> demonstratives."

The Special Master agrees with Judge Wilken's findings that

allow for the taxation of costs related to physical production of

computer animated demonstratives, and determines that Plaintiff

should be allowed costs for items falling into this category.

This, however, brings us to what the Special Master sees as three issues:

1) The parties <u>appear</u> to agree that one cannot recover the intellectual effort in preparing graphics or the cost related to the meetings between the producers of the graphics[1] and the attorneys, but it is difficult for the Special Master from a review of the billing invoices to get an exact read on the amount involved.

A review of the invoices attached to Birnholz's Declaration indicates the following charges that appear to be of the invalid type.[2]

Consulting and client meeting:  Total  $ 19,643.75.

| | |
|---|---|
| Trial – arbitration hearing<br>  Preparation: | Total  $ 35,556.25 |
| Trial – arbitration hearing<br>  Support | <u>Total  $ 95,371.25</u> |
| | Total $141,571.25 |

In commenting on intellectual effort and attorney-client meetings, the Defendants have a lesser amount, namely, $118,861.35 (*see* page 21 of Defendants' Exhibit "A" Objections to Clerk's Taxation of Costs).

---

[1] That, of course, is the holding in the Ninth Circuit case of Romero v. City of Pomona (1989), 883 F.2d 1414, 1427-1428.

[2] The Special Master recognizes he is trying to discern specific billings from somewhat limited details in an invoice and could be in error.

Accordingly, the Special Master will adopt this lesser figure as the amount that should be deducted from Plaintiff's $510,568.33.

2) As pointed out in the Special Master's Tentative Ruling, there is a substantial body of case law that holds that exemplifications that are merely used for purposes of argument or are only blown up copies of documents already in evidence or only illustrative of a witnesses' testimony, *e.g.*, witnesses' statements in depositions or at trial blown up are not recoverable as they fail the "necessary" test. (*Robertson v. McCloskey, Dist. Of Columbia*, 12 F.R.D. 131 (1988); *Independence Tube Co. v. Copperweld*, 543 F.Supp. 706, 722-723 (N.D. Ill. 1982); *Vornado v. Duracraft*, 1995 W.L. 194070 (D. Kan. 1995); *B.A. Battenfeld, et al. v. Baird, et al.*, 196 FRD, 613, 616 (D. Kan. 2000); *Manildra Milling v. Ogilvie*, 878 F.Supp. 1417, 1428 (D. Kan. 1995); *Neumann v. Reinforced Earth*, 109 F.R.D. 698, 701 (D.D.C. 1986).

It should be noted that *Copperweld* is a district court case within the Seventh Circuit.

I've read the Ninth Circuit cases, as well as those from district courts within this Circuit, and I have not seen one yet that directly contradicts this concept. They may be there, but I haven't seen them.

The Ninth and Seventh Circuits' law relied on by Judge Wilken in her *L.G. Electronics* opinion do not relate to this issue: *Maxwell v. Hapag, Lloyd, et al.*, 862 F.2d 767, 770 (9th Cir. 1988). The court allowed as costs "photos of the dock and vessel and videotapes of the wake at shore," determining that photographs and graphic aids such as these were encompassed under the definition of exemplification.

In the dissent in *Kokos v. Toys R Us*, 282 F.3d 1355 (2002 Fed. Cir.) the dissenting judge would have allowed as costs a video finding for his opinion support in *Reinharts, Inc. v. Caterpillar, et al.*, 99 F.2d 648, 649 (9th Cir. 1938) allowing costs for "elaborate illustrative charts" in a patent lawsuit and also citing *Appliance Investment v. Western Electric*, 61 F.2d 752 (2nd Cir. 1932) which allowed simplified drawings illustrating the patent in question.

*Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000) does state "our own costs embrace the more expansive definition of exemplification . . . the term is ordinarily construed as permitting an award of . . . preparing maps, charts, graphs, photographs, motion pictures, Photostats, and kindred materials . . . This approach allows appropriate room for the more sophisticated types of multi-media presentations made possible by technological advances . . ."

The court did go on to comment about the necessity at times to enlarge "crucial documents as the only practical means of permitting a witness (or judge and jury) to point out the forensic features of a document." *Cefalu* at 428. *I.e.*, if it's difficult to read in its original form, then enlargement would be appropriate.

With this possible exception, the aforestated cases are silent on the issue of exemplification used for argument or blowing up portions of a witness' testimony or blowups of other documents or materials in evidence that can clearly be read by the court or jury.

There are, as Sony points out, 638 graphics or video slides of which 235 are blocked out and were not used at the trial. This leaves 403 that were, in fact, used. The total cost of producing these exemplifications was $391,706.98 (original cost of $510,568.33, minus $118,861.35 for the intellectual effort and attorney meetings discussed above).

Accordingly, the Special Master will recommend that the Court follow this line of cases. The Special Master has reviewed each of the video slides in question and finds that approximately 203[3] of them are

---

[3]List of approximate 203 videos:
    <u>Opening</u>:  #10, 12, 13, 15, 16, 18, 22, 23, 25, 28, 33-37, and 48.
    <u>Closing</u>:  #18, 19, 21, 24, 29, 31-33, 48, 49, 88, 95-97, 100, 101, 106, 113
115, and 168-170.
    <u>Rebuttal</u>:  #5-13.

exemplifications, the cost of which can be recovered by Plaintiff from Defendants as they relate to blowup of patents and/or are explanatory of the technical issues involved in the case and meet the definition of "computer animated" demonstrations (p. 3 of Opinion). The remaining amounts are either argumentative or blowup of testimony or jury instructions or duplications.

The issue of the blocked out graphics that were not used will be discussed hereafter, but first we must determine the appropriate amount to award for the aforestated 203 exemplifications.

Apportionment seems like the fairest way to approach this problem, particularly since it is difficult to get a full and complete understanding from the invoices which are somewhat terse or relate to computer-type activities and therefore difficult to distinguish between them. Also there was no evidence offered that to do less graphics

---

Colgate: #3, 4, 6, 8, 11, 12, 16, 17, 18, 19, 20, 26, 30, 32-35, 37-39, 53, 56, 58, 61, 64, 65-68, 75-83, 88, 91, 95, 97, 98, 100, 102, 104, 106-111, 114-118, 121-124, 126, 128, 131, 155-158, 170, 171, 173, and 181.

Gerstman: #5, and 7.
Howe: #2, 3, 6-20, 22-25, 27, 28, 30, 31, and 36-38.
Goldenberg: #4.
Lin: #5, 13, 14, 22-25, 28, 29, 33, 38, 39, and 41.
Musica: #22.
Salisbury: #6, 7, 10, 23, 60, 62,and 63.
Wagner: 0.
Yim: #3-6, 8, 11-17, and 19-28.
Jay: 0.
Viegas 0.

would cost more individually.  Therefore, since 203 is approximately 32 percent of the total graphics, the Special Master recommends the sum of $125,346.00 for these exemplifications.

3)  The last issue regarding exemplification charges is dealing with the 235 blocked out and not used graphics that Sony contends for cost shifting are not "necessary" as that term has been defined by the cases (see the Special Master's tentative ruling).

Plaintiff argues that a trial is not an exact science and one must prepare for all alternatives and therefore these should be considered "necessary."

In the Special Master's opinion, Plaintiff's argument has some validity, but 235 unused graphics constitutes some 37 percent of the total and that clearly seems unwarranted from a "necessary" standpoint.  As pointed out in the Special Master's tentative ruling, "necessary" for cost shifting does not mean what is reasonable or good practice for trial lawyers, but has been given a far stricter interpretation.  Furthermore, the Special Master assumes that it is probable that certain of these blocked out or not used graphics may well be argumentative and thus, not "necessary."

As a compromise, the Special Master would recommend allowing 75 of these unused graphics as "necessary" (approximately

one-third of those blocked out), and this is apportioned as approximately 12 percent of the total costs of $391,707.00, equaling $47,005.00.

## COPYING COSTS

In my tentative ruling (January 4, 2006), I determined that based on a review of commercial copying rates that "necessary" copying charges in this matter should be set at $.09 for all black and white and $.79 for color.

At the meeting with counsel in March 2006, Plaintiff objected to these amounts, and in a follow-up letter to the Special Master (March 27, 2006) pointed out that copying documents for litigation often is complex involving a "significant amount of copying folder labels, pages of different types, post-it notes, and removing and replacing staples and the like."

Plaintiff also forwarded copies of commercial rates for litigation work from various copying establishments including:

| | | |
|---|---|---|
| Summit: | Light litigation | $.08 - $.10 |
| | Medium | $.10 - $.12 |
| | Heavy | $.12 - $.15 |
| Westside: | $.08 - $.15, depending on labor intensity | |
| Unlimited: | $.07 - $.14 (same categories) | |

Based on this information, the Plaintiff requested the Special

Master to reconsider his tentative finding and either award $.15 a page

as requested or that ". . . rate should at the very least fall in the

'medium' or 'heavy' litigation range such as $.12 or $.13 per page."

In reviewing sample copies of copying invoices actually paid

(Exhibits 1 and 2 to Part D of Birnholz Declaration) the Special

Master notes that at times Plaintiff paid $.11, $.18, $.25 (Glassworks),

$.13 ½ and $.14 ½ but some 60,000 copies were done at $.11 and

some 39,000 copies at $.13 which accounts for slightly over one-half

of the non-colored copies.  Accordingly, based on the above

information, the Special Master finds that a valid average rate for non-

color copying in this case is $.12.  This also falls in the high end range

for "medium" litigation at various copying establishments.

There are, according to Part "D," 180,754 pages of non-colored

copies and at $.12 a page that amounts to $21,690.48.

There are but 1,195 pages of non-colored copies.  The same

material referred to above indicates commercial rate for color,

depending on the size range from:  $.75 to $1.25, Unlimited; $1.00 to

$1.50, Westside; $1.00 to $2.00 at Summit.  Accordingly, the rate of

$1.25 per page requested by Plaintiff does not seem unreasonable and

is within the average range.  There are also copies of invoices submitted in which Plaintiff's attorneys paid $1.25 for color copies.

Colored copying costs equal $1,493.75 (1,195 pages x $1.25 per page).

The final request by Plaintiff for copying costs relates to obtaining a true copy of the patent bill history, including prior art patents and their references.  The dispute here as set forth in the Special Master's tentative opinion is that Plaintiff's attorney and clients already possessed the entire patent history and it is both unreasonable and unnecessary to make an official copy and then pass these costs on to Defendant.  Plaintiff's response was without an official copy a defense attorney could object to its admission into evidence.

Frankly, the most reasonable thing for Plaintiff to have done, as the Special Master already noted, was to first ask the defense attorney if they would agree to Plaintiff's copy or was it necessary for Plaintiff to obtain an official copy from the patent office.  This is costs shifting and in the Special Master's opinion this is not a "necessary" copying expense.  The total amount comes to $3,872.97 (page 8-9 of Part "D") and the Special Master will recommend not allowing these particular copying costs.  The exceptions would be numbers 3 and 8 of "D."

Defendants have not objected to these amounts and the Special Master will accordingly recommend awarding the amount asked: $1,068.51.

The last issue regarding copying costs is which of the copying costs referred to heretofore were "necessary."

Under the case law cited in the Special Master's tentative ruling what is "necessary" as compared to convenient or reasonable is for the prevailing party only to be able to recover costs for one copy of documents.  The courts have held more than one copy is strictly for convenience of counsel.  Accordingly, the Special Master recommends the following:

As to 75,367 pages Plaintiff seeks to recover for two copies, the Special Master recommends it recover one copy at the $.12 per copy rate, equaling $9,044.04.

There are 1,195 colored copies the Special Master will recommend one copy of the same at $1.25 per copy, equaling $1,493.75.

Other listed categories are:

"During trial one set each for witness and opposing counsel, 14,250 pages."

"During bench trial, one set each for judge, clerk, witness and opposing counsel, 1,137 pages."

The Special Master assumes these were done at the request of the court to expedite matters and accordingly would allow the total of 15,387 pages at $.12 a page, equaling $1,846.44.

To Summarize:

The Special Master recommends total copying costs of $12,384.23, in addition to the copying costs regarding patent history be allowed finding them all "necessary" in this complex matter.

## VIDEO DEPOSITION COSTS

According to Section B of the Birnholz Declaration, all of the 56 depositions taken during the pretrial phase of the case were videotaped and/or put on CDs. Defendants, in their reply brief, note that the cost of the same amounting to $41,814.30 was excluded by the Clerk and they object to Plaintiff's request that the Special Master recommend allowing these on the basis that they are not "necessary."

The Special Master recommends that these costs be allowed, *i.e.,* taxed on the basis that with today's technological advances in complex litigation the videotaping of depositions is clearly commonplace and usual. In the Special Master's opinion, in modern high stakes complex litigation this has become clearly "necessary," and the Special Master recommends this cost be allowed by the Court.

Defendants contend, apparently correctly, that some

$31,043.80[4] reflect costs of videotapes that exceed the one original

and one copy permitted by Local Rule 54-3(c)(1).  Therefore, the

Special Master's recommendation is that an amount of $10,770.88 be

allowed for videotaped depositions.

## FEES FOR WITNESSES

The contention by the defendant(s) appears to be that certain

witnesses returned home for weekends or were called back for further

testimony later in the case resulting in excess travel charges beyond

the per diem rate.  The contention is that this is not "necessary" and

was done for the convenience of witnesses.

The Special Master's ruling would be that each witness is only

allowed $143 a day living expenses plus one round trip travel expense

with the exception of those witnesses who were recalled later in the

trial.[5]

---

[4]In the event there is a dispute about the accuracy of said $31,043.80 figure, then the Special Master will be available to resolve the dispute.

[5]*See Media Vision, supra*, pg. 1369.

[15] Although this Court recommends granting travel reimbursement expenses, it is the opinion of this Court that the total amount of reimbursement requested be reduced to reflect the per diem travel expenses ordinarily reimbursed to all federal government employees, including judiciary personnel and United States government attorneys, for business-related travel.  The federal government guidelines are outlined in the Administrative Manual, *Guide to Judiciary Policies and Procedure*, Volume III, Chapter VI, Section 7, rates effective as of January 1, 1995.

The Clerk's initial taxation for these fees was $7,228.10. The Special Master's finding reduces it to $4,791.00, based on the total of the following amounts:

| | |
|---|---|
| Witness Colgate | $1,703.80 + $424.00 |
| Witness Gerstman | $1,109.20 |
| Witness Harve | $ 309.10 |
| Witness Lin | $1,239.00 |

## COURT REPORTERS' COSTS (WITH EXCEPTION OF VIDEOTAPING

The Clerk taxed fees for court reporters and transcripts at $70,909.92, and Sony has accepted this figure as valid. (*See* its Exhibit "17.") There also <u>appears</u> to be no objection by Immersion based on a review of its memorandum in opposition to Sony's motion for review, and accordingly, the Special Master will award costs to Plaintiff in this amount.

## COMPENSATION OF INTERPRETERS

Plaintiff submitted a Brief for these costs in the amount of $45,000.42. The Clerk taxed the claim at $30,151.41, eliminating $14,849.00 for Jared Taylor who served as check interpreter at trial during the testimony of Sony Okamoto.

In its final Brief the Plaintiff accepts the Clerk's position, "the Clerk's award is appropriate" (pg. 15).

Defendants, however, argue that the correct amount should be approximately $4,500.00 less, urging a figure of $25,603.49.

The dispute centers around travel costs for interpreters regarding depositions in Osaka. Instead of hiring interpreters from Osaka, Plaintiff apparently had them travel from outside the area. This expense is the main issue and the Special Master's recommendation is that it is not a "necessary" charge for purposes of transferring of cost.

Accordingly, as set forth in this tentative ruling, the Special Master recommends interpreter costs be awarded Plaintiff in the amount of $25,603.49.

<u>CLERK'S FEES – SERVICE OF PROCESS OF COMPLAINT</u>

In their motion for review Defendants do not challenge Plaintiff's request for this fee in the amount of $431.00.

<u>TO SUMMARIZE:</u>

The Special Master recommends the following of Plaintiff's cost be taxed:

<u>Exemplifications (Non-Copying)</u>

$125,346.00 + $47,005.00 = $172,351.00

Copying Costs

$12,384.23 + $1,068.51 = $13,452.74

Video Deposition Costs

$10,770.88

Witness Fees

$4,791.00

Court Reporter Fees

$70,909.92

Interpreter Fees

$25,603.49

Clerk's Fee

$431.00

Total = $298,310.00.

DATED: June _5_, 2006.

_____
The Honorable Eugene F. Lynch (Ret.)
Special Master