IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA, INC., and SONY COMPUTER ENTERTAINMENT, INC.,<br><br>    Defendants.<br>_____/ | No. C 02-0710 CW<br><br>ORDER AWARDING IMMERSION $332,692.33 IN COSTS AND DENYING IMMERSION'S REQUEST FOR SUPPLEMENTAL AWARD OF COSTS |

    Defendants Sony Computer Entertainment America, Inc., and Sony Computer Entertainment, Inc., (collectively, Sony) has moved for review of the Clerk's taxation of costs in favor of Plaintiff Immersion Corporation (Immersion). Immersion cross-moved for review. Pursuant to the parties' stipulation, the Court appointed retired Judge Eugene F. Lynch of JAMS to serve as Special Master and review the motions. Judge Lynch issued a tentative ruling on January 4, 2006, and filed a final Report and Recommendation on June 14, 2006. Both parties objected to portions of the Special Master's Report and Recommendation. Immersion has also filed a supplemental bill of costs incurred as a result of Sony's motion under Federal Rule of Civil Procedure 60(b) for relief from final judgment. Sony opposes any supplemental award of costs. These objections were taken under submission on the papers.

After consideration of all the papers filed by the parties, the Court adopts the Special Master's Report and Recommendation in part and modifies it in part, as described below.

BACKGROUND

In this patent infringement case, Immersion prevailed at trial on certain of its claims that Sony's Playstation consoles and Dualshock controllers, in conjunction with forty-four accused games, infringed U.S. Patent Nos. 6,275,213 ('213 patent) and 6,424,333 ('333 patent), owned by Immersion. After a trial of approximately five weeks, a jury reached a verdict on September 21, 2004, finding that the asserted claims of Immersion's patents were not invalid due to anticipation, obviousness or inadequate written description. The jury awarded Immersion eighty-two million dollars as a reasonable royalty for Sony's infringement. The Court later found in favor of Immersion on Sony's inequitable conduct defense, denied Sony's motions for judgment as a matter of law and denied Sony's motion for relief from final judgment. See March 2, 2004 Order Resolving Parties' Motions for Summary Judgment; January 10, 2005 Order Denying Parties' Motions for Judgment as a Matter of Law and Addressing Other Matters; March 8, 2006 Order Denying Defendants' Motion for Relief from Final Judgment (hereinafter Rule 60(b) Order). Sony has appealed the judgment against it.

Immersion, as the prevailing party, filed an Amended Bill of Costs seeking to tax $758,537.55 in costs (according to Immersion, this amount is only a "fraction" of the expenses it has incurred). The Clerk awarded costs to Immersion in the amount of $514,612.76. The Special Master, after briefing and oral argument, recommends

2

1 that the Court award Immersion $298,310 in costs.  The objections of
2 both Immersion and Sony, as well as the Special Master's
3 recommendation, are described in detail in the discussion section
4 below.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) authorizes the Court to grant the prevailing party its costs.  The determination of taxable costs is governed by 28 U.S.C. § 1920 and, more particularly, Local Rule 54-3, which specifically enumerates the standards for costs recoverable in this District.  This Court may only tax costs explicitly authorized by § 1920.  See Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 177-78 (9th Cir. 1990); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442 (1987).  Section 1920 permits the taxing of costs for various items, such as deposition transcripts and copying of papers, if they are "necessarily obtained for use in the case."  28 U.S.C. § 1920.

## DISCUSSION

I. Exemplification and Demonstrative Aids

    A.  Computer Graphics

The largest category of disputed costs involves the production or exemplification of graphics or other computer-generated demonstratives.  The Special Master recommends (1) that the Clerk's award be reduced by $118,861.35, on the ground that Immersion cannot recover the intellectual effort of preparing graphics or the cost of meetings between the producers of the graphics and the attorneys; (2) that Immersion be allowed to recover costs of only those demonstrative graphics that relate to the patents or otherwise

3

explain technical issues; and (3) that Immersion be allowed to recover only a portion of the costs of the production of the approximately 235 computer graphics not used at trial. Immersion objects to the Special Master's first two recommendations, and, with respect to the third recommendation, asks the Court to revise the proportion upward. Sony objects to even a proportional award to Immersion for costs incurred due to computer graphics that were not used at trial.

### 1. Intellectual Effort in Preparing Graphics

Permissible exemplification fees are narrowly construed "only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." Romero v. City of Pomona, 883 F.2d 1418, 1428 (9th Cir. 1989). In other words, parties may not "shift their expert witness [or lawyer or lay witness] costs to plaintiffs under the guise of exemplification costs." Id.

The Special Master concluded that, of the costs requested by Immersion for preparation of computer graphics, $118,861.35 related to the intellectual effort, rather than the physical or technical effort, involved in production. Immersion has not demonstrated that this conclusion was incorrect. Accordingly, the Court adopts the Special Master's recommendation to reduce the costs taxed by the Clerk by $118,861.35.

### 2. Costs for Production of Graphics

The Special Master's report sets forth the relevant authority pertaining to recovery of costs for computer graphics used at trial, and recommends that Immersion be awarded $125,346.00. See also

4

Order Amending Clerk's Award of Costs and Denying Pl.'s Mot. for Stay of Costs, <u>LG Electronics v. Asustek Computer, Inc.</u>, No. C 01-1375 CW, slip op. at 6-9 (N.D. Cal. July 21, 2005) (holding, in another complex patent case, that the costs of producing a computer animation of a patent and the technology it disclosed were reasonably necessary to assist the jury in understanding the issues at trial). The Special Master viewed each of the video slides that Immersion used at trial and recommends allowing costs only for the thirty-two percent of slides that showed the jury magnified views of patents or explained other technical issues, but not the remaining slides that were argumentative or magnified testimony, jury instructions or other easily-read documents.

    Immersion objects to the Special Master's exclusion of the latter category of slides on the ground that their use was reasonably necessary, in this lengthy and complex case, in order to present the issues to the Court and the jury in an "accessible and meaningful way." Pl.'s Objs. to Special Master Rep. at 8. Although the Court agrees that use of computer-generated demonstratives was reasonably necessary for the presentation technical or scientific concepts, the Court disagrees that Immersion's use of computer graphics to present argument and to magnify texts, such as testimony or jury instructions, was similarly necessary. Immersion was undoubtedly, and reasonably, influenced by Sony's heavy use of computer-generated graphics, but the parties' mutual investment in electronic presentation was not necessary to the jury's understanding. Therefore, the Court adopts the Special Master's recommendation and will award costs to Immersion only for those

5

slides he identified as allowable exemplification.

### 3. Unused Slides

Immersion seeks to tax the costs of approximately 235 graphics that were not used at trial. Sony characterizes all such graphics as "unnecessary." The Special Master accepted Immersion's argument that adequate trial preparation necessarily included preparation of graphics that would ultimately be unused, but found that the total amount of unused graphics was unnecessarily large. He therefore recommends that the Court allow costs for roughly the same percentage of the unused video slides as were allowed for the slides actually used at trial. The Court agrees that in a case of this size and complexity, the preparation of some excess graphics was reasonably necessary, and it further agrees with the Special Master's recommendation to allow the cost of only a portion of the unused slides as an appropriate compromise. Therefore, the Court adopts his recommendation to tax $47,005.00 in costs for these items.

### B. Video Editing

The Clerk did not tax video editing and dubbing costs and, although Immersion moved to increase costs taxed to include such costs, the Special Master did not specifically address the issue in his report or recommend that the Court increase costs on this basis.[1]  Immersion argues that it should be allowed to tax costs of

---

[1] With respect to other video costs, the Special Master agreed that the costs of video deposition were necessary, but he recommended disallowing video costs that appear to exceed the original and copy permitted by Local Rule 54-3(c)(1). The total amount recommended to be taxed for videotaped depositions is $10,770.88. Special Master's Rep. at 15. Neither party appears to

6

video editing because some potential Sony witnesses resided in Japan and were unavailable to travel to the United States, and the Court agreed that dubbing their testimony into English was the most efficient presentation. The fact that the Court agreed that dubbing of these potential witnesses was an acceptable and convenient solution does not mean that it was necessary in the context of this case. Therefore, the Court overrules Immersion's objection to the Special Master's failure to include this item in his recommendation.

### C.  On-site Audio-Visual Support

The Clerk also did not tax costs of on-site audio-visual support and, although Immersion moved to include such costs, the Special Master did not recommend that the Court increase costs on this basis. Immersion argues that audio-visual support in the courtroom was reasonably necessary, and that an additional $22,500.00 should be allowed for this purpose (twenty court days at five hours per day at the firm's rate of $225 per hour). The Court disagrees. Although convenient, an on-site technician was not necessary in order to operate the courtroom audio-visual equipment. Therefore, the Court overrules Immersion's objection to the Special Master's recommendation.

### D.  Copying Costs

The Special Master recommends that Immersion recover $12,384.23 in copying costs, for one set of copies at a rate of $0.12 per non-color copy and $1.25 for color copies, in addition to some copying costs related to the patent history. Immersion objects on the

---

object to this portion of the Special Master's report, and the Court adopts it.

7

grounds that the Special Master (1) failed to include the costs of copying the trial exhibit binders lodged with the Court before trial; (2) failed to include costs for a set of discovery documents for Immersion; and (3) incorrectly calculated costs for reproducing patents and PTO file histories.

### 1. Trial Exhibit Binders

In his tentative ruling, the Special Master opined that Immersion's request for two sets of copies (one for the judge and one for the Clerk) of its 991 trial exhibits was unnecessary where only 192 exhibits were ultimately offered into evidence.  Even recognizing pre-trial uncertainty about which documents will be introduced at trial, he wrote that "there is no question" that "offering only one fifth of the exhibit[s] into evidence and then seeking copying costs for all of them is questionable."  Tentative Ruling at 14.  However, the Special Master omitted this entire amount (90,000 pages at $0.12 per page, for a total of $10,800)[2] from his final calculations.  The Court agrees with Immersion that the trial exhibit binders were required expenses, but agrees with Judge Lynch that the total number of trial exhibits copied was excessive in light of the much smaller number actually used. Therefore, the Court will allow Immersion to tax only half of the two sets of trial exhibits, or $5,400.

### 2. Immersion's Discovery Copies

The Special Master allowed Immersion's costs for copies of documents produced to Sony, but recommended disallowing Immersion's

---

[2] Sony dismisses this amount as "speculative;" however, it is adequately supported by the Birnholz declaration.

8

request for its own copy of those discovery documents, following authority holding that more than one copy is a matter of convenience, not necessity. Immersion objects, arguing that in this complex patent case, having its counsel's own copy of discovery materials, to avoid working with originals, was a necessity, not a luxury or convenience. Consistent with its rulings in other complex patent cases, the Court will not allow Immersion to tax its own copy of its discovery materials, and therefore the Special Master's recommendation on this issue is adopted.

### 3. Patents and PTO File Histories

The Special Master recommends disallowing $2,804.46 in costs for obtaining from the PTO official copies of patent histories which Immersion already possessed, on the grounds that Immersion should have first asked Sony to stipulate to the admissibility of the unofficial patent histories. Immersion asserts that Sony would "undoubtedly" have refused to stipulate but, while this may be true, it does not respond to the Special Master's reasoning that Immersion should have attempted a more cooperative approach. Therefore, the Court adopts his recommendation to award only $1,068.51 in costs for obtaining official patent documents.

## II. Witness Fees

The Special Master recommends that Immersion be allowed to tax as necessary witnesses expenses only a per diem rate and travel expenses for one round trip per witness, except for witnesses recalled later in the trial. Immersion expert witness Dr. Edward Colgate made three separate trips from Chicago to Oakland during trial to testify on August 16 through 19, August 22 and 23 and

September 6 through 8.  Immersion asks that the cost of each trip be taxed.  Although the Special Master's recommendation suggests that two of Dr. Colgate's trips would be taxed because he testified during both the presentation of Immersion's case-in-chief and in rebuttal, the Special Master's calculation includes only one round-trip airfare.  The Court agrees with Immersion that a separate trip for Dr. Colgate's rebuttal testimony is a permissible expense.  However, the Court finds that Dr. Colgate's weekend trip back to Chicago in the midst of his testimony during the case-in-chief was a matter of convenience rather than necessity, and should not be taxed to Sony.  Therefore, the Court will add an additional $1,051.30 to the Special Master's calculation of witness expenses.

III.   Interpreters

Immersion objects to two types of costs relating to interpreters which the Special Master did not recommend taxing: (1) its request for $14,849 for the services of a check interpreter during the Japanese-language deposition of a Sony executive; and (2) Immersion's interpreters' travel costs to and from Osaka.

With respect to the first objection, the Special Master relied on Immersion's acceptance of the Clerk's award in deciding not to include in his recommendation for taxation of costs the services of the check interpreter.  The Court adopts his recommendation.

In its second objection, Immersion notes that Sony's interpreters traveled to Osaka from Los Angeles, and explains that it hired two highly recommended Tokyo-based individuals who were familiar with the technical issues.  Immersion does not state that it made any attempt to find similarly qualified interpreters in

10

Osaka.  Immersion's rationale for hiring non-local interpreters speaks to convenience rather than necessity.  Therefore, the Court adopts the Special Master's recommendation regarding taxation of the interpreters' travel costs.

IV.  Other Costs

Immersion objects to the Special Master's recommendation on the grounds that it omits, likely inadvertently, $5,425 in deposition reservation fees at the American Consulate in Osaka, Japan.  Sony agrees that this amount should be added to the Special Master's recommendation.  Accordingly, the Court increases taxation of costs for this $5,425 in "other costs."

V.  Immersion's Request for Supplemental Award

Immersion requests that the Court enter a supplemental award of $45,879.48 in costs incurred as a result of Sony's unsuccessful motion under Rule 60(b) for relief from final judgment.

The Court agrees with Sony that Immersion's supplemental bill of costs is untimely.  Civil Local Rule 54-1(a) requires that a bill of costs be served and filed "[n]o later than 14 days after entry of judgment or order under which costs may be claimed."  Here, the supplemental bill of costs was filed several months after the Court issued the order for which Immersion now maintains that costs may be claimed.

For these reasons, the Court denies Immersion's request to enter a supplemental award of costs.

CONCLUSION

For the foregoing reasons, the Court adopts the Special Master's Report and Recommendation (Docket No. 1923) in part and

11

1  overrules it in part, thereby GRANTING in part the parties' cross
2  motions for review of the Clerk's taxation of costs (Docket Nos.
3  1701 and 1703) and DENYING them in part, as follows.  Immersion is
4  awarded a total of $332,692.33 in costs.  This total includes
5  $194,851.00 for non-copying exemplification costs; $18,852.74 for
6  copying costs; $10,770.88 for video deposition costs; $5,842.30 for
7  witness fees; $70,909.92 for court reporter fees; $25,609.49 for
8  interpreter fees; $431 for the Clerk's fee; and $5,425 for other
9  costs.  Immersion's request for a supplemental award of costs is
10 DENIED (Docket No. 1926).

12     IT IS SO ORDERED.

14 Dated: 8/23/06



   CLAUDIA WILKEN
   United States District Judge